# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10370
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2015

Lyle W. Cayce
Clerk

ERIC EDDY,

       Plaintiff - Appellant

v.

THE PRINTERS HOUSE (P) LIMITED,

       Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-2179

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Eric Eddy appeals the district court's order dismissing Defendant–Appellee The Printers House (P) Limited for lack of personal jurisdiction. Eddy argues that the district court did not lack personal jurisdiction because The Printers House established minimum contacts with Texas. For the following reasons, we AFFIRM the order of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10370

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2006, Eric Eddy suffered an injury he alleged was caused by a defect in a printing press manufactured by The Printers House (P) Limited ("TPH"). Eddy's injury occurred in Texas at a facility responsible for printing the Waxahachie Daily Light Newspaper ("Waxahachie Daily"), but the printing press was manufactured in India where TPH is incorporated and operates. TPH produces and supplies commercial printing presses used by newspaper and book printers, and each press is custom designed to meet a particular customer's needs. In 1999, the press that injured Eddy was originally manufactured for, delivered to, and installed at Intermountain Color, a commercial printing business in Kosciusko, Mississippi. Intermountain Color sold the press to Graphicartsequipment.com ("Graphic") in April 2006. In May 2006, Graphic then resold the press to American Consolidated Media, the parent company of the Waxahachie Daily, and it was subsequently installed in Waxahachie, Texas, by Al Taber and Associates ("Taber"). Prior to installing the press, Taber ordered spare parts from TPH, including nuts, bolts, a drive shaft, and other parts. Although Taber's operations were based in Georgia, it requested that TPH ship the parts directly to Waxahachie, Texas. There is no indication that TPH conducted any business in Texas or had any contact at all with the state beyond shipping one order of spare parts to Waxahachie.

Following the installation of the press and Eddy's injury, he filed an action in Texas state court on August 13, 2008, against TPH and other defendants, including Taber and Graphic. TPH entered a special appearance, objecting to the state court's personal jurisdiction over it, before removing this action to the United States District Court for the Northern District of Texas on December 10, 2008, invoking that court's diversity jurisdiction. The district court dismissed Eddy's claims against TPH in January 2010 after concluding

2

No. 15-10370

that it lacked personal jurisdiction over TPH.  The court noted that Eddy never alleged that his injury was caused by the spare parts TPH shipped to Texas or even that the parts were actually used in the installation of the printing press. Because Eddy did not allege that his injury arose from TPH's sale of spare parts in Texas, the court concluded it could not exercise personal jurisdiction over TPH.  Although the district court dismissed Eddy's claims against TPH for lack of personal jurisdiction in 2010, it did not enter a final, appealable order until March 26, 2015.  Eddy timely appealed on April 24, 2015.

## II. STANDARD OF REVIEW

We review a district court's determination that it lacks personal jurisdiction *de novo*.  *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012).  Because the plaintiff "seek[s] to invoke the power of the court[, he] bears the burden of proving that jurisdiction exists."  *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  The plaintiff need not establish the court's personal jurisdiction over the defendant by "a preponderance of the evidence; a prima facie showing suffices."  *Id.*  "In determining whether a *prima facie* case exists, this Court must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation."  *Pervasive Software*, 688 F.3d at 219–20 (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)).

## III. DISCUSSION

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident corporate defendant only when two conditions are satisfied. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the court's "exercise of such jurisdiction [must be] consistent with due process under the United States Constitution."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  Because the Texas long-arm statute extends to the

limits of due process, *Pervasive Software*, 688 F.3d at 220, this two-prong framework collapses into a single inquiry into whether subjecting TPH to suit in Texas is consistent with the Due Process Clause of the Fourteenth Amendment, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). "The Due Process Clause . . . sets the outer boundaries of a [court's] authority to proceed against a defendant," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011), and protects a nonresident defendant against suit in a forum with which it has established no meaningful "contacts, ties, or relations," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

To determine whether due process permits the exercise of personal jurisdiction, we ask whether two requirements are met. First, the nonresident defendant must have "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Second, "the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Mink*, 190 F.3d at 336). If either of these requirements is not satisfied, a district court may not exercise personal jurisdiction over the nonresident defendant.

Turning first to "minimum contacts," this requirement ensures that the defendant "purposefully availed [itself] of the benefits" of the forum state such that it could "reasonably anticipate being haled into court there," *id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), and may be satisfied by contacts sufficient to establish general jurisdiction or specific jurisdiction, *id.* As the Supreme Court explained in *Goodyear*, a district court may exercise general jurisdiction when a defendant's contacts with the forum state are "substantial" and "continuous." *Goodyear*, 131 S. Ct. at 2853 (quoting *Int'l Shoe*, 326 U.S. at 318). Eddy concedes that he cannot establish sufficient

contacts to support the exercise of general jurisdiction over TPH, so our inquiry focuses on whether TPH had sufficient contacts with Texas to support the exercise of specific jurisdiction.

"Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that arise out of or relate to those activities.'" *Alpine View*, 205 F.3d at 215 (quoting *Burger King,* 471 U.S. at 472). In cases involving products sold or manufactured by foreign defendants, we apply the "stream-of-commerce" approach to personal jurisdiction. *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). Under this approach, minimum contacts exist when the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id.* (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). However, "mere foreseeability or awareness [that a product would enter the forum state is] a constitutionally sufficient basis for personal jurisdiction [only] if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (quoting *Luv N' care*, 438 F.3d at 470). Additionally, "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'" *Id.* (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)).

In this case, Eddy alleged his injury resulted from a defect in the printing press manufactured by TPH. Based on this allegation, two different instances of contact between TPH and Texas could potentially warrant the exercise of specific personal jurisdiction: (1) TPH sold the printing press to a customer in the United States, and this press eventually caused Eddy's injury in Texas; and (2) TPH shipped spare parts for this press to Waxahachie, Texas, and these

No. 15-10370

parts contributed to Eddy's injury. However, neither of these instances of contact between TPH and Texas is sufficient to support the exercise of specific personal jurisdiction.

When TPH manufactured the printing press at issue in 1999, it designed the press specifically for a buyer in Mississippi.[1] Once the press was installed in Mississippi, it exited the stream of commerce because the Mississippi buyer was a consumer of the product, not a distributor or retailer. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (noting that corporations deliver products into the stream of commerce expecting that they will reach consumers). Because TPH sold the press to a Mississippi buyer to use, as opposed to distribute or resell, TPH neither had an "expectation" that the press "would be purchased by or used by consumers in [Texas]," *Ainsworth*, 716 F.3d at 177 (quoting *Bearry*, 818 F.2d at 374), nor could have foreseen that the press would "ma[ke] its way into [Texas] while still in the stream of commerce," *id.* (quoting *Luv N' care*, 438 F.3d at 470). The fact that the original buyer of the press sold it to another entity, which then sold it to another entity, clearly establishes that the press found its way into Texas not through any intentional act taken by TPH but through "the unilateral activity of . . . third [parties]."[2] *Id.* (quoting *ITL Int'l*, 669 F.3d at 498). As the press's presence in Texas was the result of "fortuitous" and "attenuated" acts of third parties, *id.* (quoting *ITL Int'l*, 669 F.3d at 498), and not the result of TPH "purposefully avail[ing itself] of the benefits and protections of [Texas]," *Alpine*

---

[1] Eddy alleged that between ten and fifteen TPH presses are present in the United States. However, he did not allege that any of these presses were ever sold (or even present) in Texas, so these allegations do not support the exercise of personal jurisdiction over TPH. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–99 (1980).

[2] Eddy alleged that Taber was TPH's exclusive sales agent in the United States; however, the district court correctly pointed out that Eddy did not allege Taber was acting as TPH's agent during the installation of the press in Texas. Thus, Eddy did not allege any facts supporting the conclusion that TPH expected its press to make its way to Texas.

*View*, 205 F.3d at 215, specific jurisdiction over TPH is not warranted based on the presence of its press in Texas, *see also World-Wide Volkswagen*, 444 U.S. at 295–99 (1980) (holding that an Oklahoma court could not exercise personal jurisdiction over a car retailer when the retailer's only connection to Oklahoma was the fact that a car sold in New York became involved in an accident in Oklahoma).

In contrast to the route taken by the printing press to Texas, TPH shipped the spare parts directly to Waxahachie, Texas, suggesting that it may have purposefully targeted Texas. However, as the district court correctly noted, Eddy never alleged that the spare parts were actually used in the press or that they caused his injury. The court explained that the closest Eddy ever came to alleging that the parts caused his injury was his statement that the parts included "a shaft, which *could be* the shaft that injured the Plaintiff." The court further explained that TPH introduced uncontroverted evidence establishing that the drive shaft Eddy alleged caused his injury was not, and could not have been, the same shaft that was shipped with the spare parts. The court found that the shaft shipped with the spare parts connects to an entirely different portion of the printing press than the portion Eddy alleged caused his injury.[3] Because Eddy does not allege that his injury "arise[s] out of or relate[s] to," *Burger King*, 471 U.S. at 472, the activities TPH directed at Texas—i.e., shipping the spare parts—he has failed to make out a prima facie case supporting specific jurisdiction, *Alpine View*, 205 F.3d at 215.

Because the presence of TPH's printing press in Texas does not establish TPH's minimum contacts with Texas and because Eddy does not allege that his injury arises out of or relates to TPH's shipment of spare parts to Texas,

---

[3] The drive shaft that contributed to Eddy's injury connected a printing unit to a "folder." However, the shaft that TPH shipped to Texas is used to connect one printing unit to another printing unit, not a printing unit to a folder.

No. 15-10370

the district court properly determined that it lacked specific personal jurisdiction.  Moreover, we need not, and do not, address whether the "fair play and substantial justice" requirement has been satisfied, as the determination that TPH lacked "minimum contacts" with Texas alone is sufficient to conclude that the district court could not exercise personal jurisdiction over TPH.

## IV. CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.