# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2026

Lyle W. Cayce
Clerk

No. 25-50406

———————

RAIZ FEDERAL CREDIT UNION,

*Plaintiff—Appellant*,

*versus*

RIZE FEDERAL CREDIT UNION, *formerly known as* SCE FEDERAL CREDIT UNION,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:24-CV-440

———————————————————————

Before JONES, DUNCAN, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

Raiz Federal Credit Union appeals the dismissal of its suit for trademark infringement and unfair competition against Rize Federal Credit Union for want of personal jurisdiction. We VACATE and REMAND.

Appellant Raiz Federal Credit Union is based in El Paso, Texas. It has operated under its current name for approximately three years, since July

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

2022. Raiz has two trademarks registered and uses them in connection with its financial services that it provides to its customers.

Appellee Rize Federal Credit Union is based in California with branches only in California and Nevada. However, Rize also serves customers located in Texas. Rize previously operated under the name, SCE Federal Credit Union, until it rebranded and changed its name in June 2024.

Raiz sent a cease-and-desist letter to Rize due to the similarity of their names and logos. Rize continued to use the allegedly infringing mark. Raiz sued for trademark infringement and unfair competition in a Texas federal court. The district court granted Rize's motion to dismiss for lack of personal jurisdiction. Raiz timely appealed.

"We review *de novo* a district court's determination that it lacks personal jurisdiction over a non-resident defendant." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff bears the burden of proving that jurisdiction exists. *Id.* When the district court rules without an evidentiary hearing, the plaintiff is required to present a *prima facie* case that personal jurisdiction is proper. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). "We resolve all relevant factual disputes in the plaintiff's favor." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

Personal jurisdiction exists if the forum state's long-arm statute applies, and due process is satisfied. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, these two inquiries merge. *Id.* Though personal jurisdiction can be either general or specific, this case only implicates the latter. *Id.* When evaluating whether due process permits specific jurisdiction, the court considers

No. 25-50406

> (1) whether the defendant has minimum contacts with the
> forum state, i.e., whether it purposely directed its activities
> toward the forum state or purposefully availed itself of the
> privileges of conducting activities there; (2) whether the
> plaintiff's cause of action arises out of or results from the
> defendant's forum-related contacts; and (3) whether the
> exercise of personal jurisdiction is fair and reasonable.

*Id.* If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

A defendant has minimum contacts when it has "purposely avail[ed] itself of the privilege of conducting activities [in the forum state], thus invoking the benefits and protections of its laws," such that it "reasonably anticipates being haled into court." *Luv N' care*, 438 F.3d at 469–70 (first alternation in original). This requirement emphasizes the purpose of the defendant's contacts and "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Carmona*, 924 F.3d at 193–94 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184 (1985)).

Raiz identifies many contacts, consolidated into the following: 1) Rize provides financial services to its members in Texas, 2) Texas members can join Rize via its website, 3) Rize sends solicitations and emails to its Texas members, 4) Rize sponsored and attended a credit union industry conference in Texas. For each contact, the court must decide whether the defendant purposely directed its activities *or* purposefully availed itself. *Id.* at 193. Raiz argues that these contacts establish sufficient minimum contacts for specific personal jurisdiction.

3

No. 25-50406

The district court purported to evaluate these contacts under the first prong only. However, it appeared to incorporate aspects of the second prong, holding that Rize's "suit-related contacts" with Texas, taken together, are insufficient to establish minimum contacts and therefore, the court lacked personal jurisdiction over Rize. Though it is a close question, the court disagrees based only on the first prong of the specific jurisdiction inquiry.

Raiz notes that Rize has over 500 members in Texas. However, the majority were from California, Nevada, or another state when they became members. Less than one percent of Rize's total membership is from Texas. A court can find minimum contacts despite this fact. *See Vault Corp. v. Quaid Software Ltd.*, 775 F.2d 638, 640 (5th Cir. 1985) (finding the necessary minimum contacts despite that only a small percentage of the defendant's sales originated in the forum state). Plus, Rize has members who originated from Texas, at least seventeen of whom joined after Rize rebranded. That the majority of less than one percent of members originated from Texas transplants suggests the type of "fortuitous" contact that the Supreme Court warns against. *See Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183.

Rize acquires members through a membership agreement, a contract. "[M]erely contracting with a resident of the forum state does not establish minimum contacts." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). However, these membership agreements create the "continuing obligations" that avail a defendant of the privilege of conducting business. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184. The contracts that a credit union maintains with its members are not the kind of "isolated or short-lived transactions" that suggest insufficient contacts. *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648, 70 S. Ct. 927, 930 (1950).

The membership process begins by a prospective member's calling Rize or initiating an application online via Rize's website. Rize argues that

4

this is insufficient "unilateral activity" under *Burger King*. This point is well taken if the communication was one-sided. However, Rize does not reject these Texas members but willingly enters into contracts with them. The district court dismissed the significance of Rize's website by relying on *Admar International v. Eastrock, L.L.C.* for the principle that a website that is accessible nationwide but does not specifically target a forum does not create minimum contacts with that forum. 18 F.4th 783, 785 (5th Cir. 2021). However, a closer read of *Admar* reveals that *merely* operating a website of that description is not enough. *Id.* at 785, 787–88. The *Admar* court distinguished a situation in which the defendant had "'engag[ed] in business transactions with forum residents' or entered contracts with them," as occurred here. *Id.* at 787 (alteration in original) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999)).

Raiz emphasizes Rize's solicitations to its existing Texas members, but these communications targeted members based on their usage of Rize services, not their geographical location. Considering prospective members, Rize does not target Texas in its advertising or marketing but focuses on California and Nevada. A defendant's advertising activity is useful but not dispositive. *See Admar*, 18 F.4th at 787 (finding no personal jurisdiction, in part, because the defendant solicited no business in the forum state through targeted advertising). *But see Vault Corp.*, 775 F.2d at 640 (finding the necessary minimum contacts even though the defendant had not targeted the forum state in its advertising).

Raiz also points to Rize's sponsorship and attendance of a credit union conference in Texas. But this was a national conference attended by other out-of-state credit unions. A few Rize executives attended, and Rize did not market its services for Texas residents at this conference. This is the kind of fortuitous contact that does not move the needle on purposeful direction or availment.

No. 25-50406

Last, Rize points to a California choice of law provision in its membership agreement. Choice of law provisions should not be ignored. *Burger King*, 471 U.S. at 482, 105 S. Ct. at 2187. "When combined with other factors, a choice-of-law clause may reinforce a conclusion" that the defendant deliberately affiliated with the forum state. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012). However, drawing the opposite jurisdictional conclusion is also possible. *See Stuart v. Spademan*, 772 F.2d 1185, 1196 (5th Cir. 1985) ("Nor is it sufficient, when added to the other alleged contacts, to alter our holding that an inference of purposeful availment is not supported by the totality of the purported contacts."). Rize's choice of California law both supports the conclusion that it has minimum contacts in California and does not mean that Rize cannot establish minimum contacts elsewhere, as in Texas.

Considering all the contacts, Raiz has made a sufficient showing that Rize has minimum contacts with Texas. Rize may not have any branches, property, or employees in Texas, but "physical presence in the forum is not a prerequisite to jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122 (2014). Rize has continuing obligations to its Texas members. Rize may not have purposely directed its activities toward Texas, but it has purposefully availed itself of the privilege of conducting business in Texas.

The district court mentioned, but ultimately did not reach, the second and third prongs of the specific jurisdiction analysis. Therefore, this court remands for the district court to decide whether Raiz's claims arise out of or result from Rize's Texas-related contacts and whether exercising personal jurisdiction is fair and reasonable. *See Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 198 (5th Cir. 2019).

VACATED and REMANDED.